MARVIN, Judge.
In this partition by licitation of property which once comprised the community estate of the litigants, the lower court allowed some of the claims of each ex-spouse against the community and against the separate estate of the other. The defendant ex-wife appeals and the plaintiff answers the appeal, each alleging errors in the lower court’s allowance or disallowance of one or more of the several claims of each litigant. We amend and affirm.
The movables of the community were amicably partitioned in kind. The partition sale of the remainder of the property produced a net community fund of almost $28,-200.
The defendant ex-wife inherited certain funds from her father during the marriage, constituting her separate property, from which she claims she paid a total of $5,000 in making a down payment on a home. The lower court recognized only $2,000 of this claim as having been proved.
*182 The plaintiff’s separate claims arose after the parties ceased living together and before the partition sale. The lower court allowed the husband’s claims totaling $7,577.35.
Judgment of separation, which was signed in January 1977, dissolved the community effective the date the petition for separation was filed, July 8, 1976. CC 155. This judgment ordered the husband to pay $700 per month pendente lite alimony. The judgment also required the husband to pay an additional $100 per month to the wife and required the wife to make the monthly mortgage payments on the former family home, which were then $415.76, until such time as the home might be sold. See Morris v. Morris, 350 So.2d 971 (La.App.2d Cir. 1977).
From August 1976 through December 1976 plaintiff paid the mortgage payments with his separate property (5 months X $415.76, or $2,078.80). In 1977 the defendant made the mortgage payments (12 months X $415.76, or $4,989.12) as the judgment provided.
The ex-wife did not comply with the judgment and did not pay the last three mortgage payments before the partition sale (January-March, 1978) which by then had been increased to $456.63. The total of these payments (3 months X $456.63, or $1,369.89) was paid as a part of the balance that was owed on the mortgage, out of the gross partition sale proceeds.
The lower court allowed these claims to plaintiff against the community:
1976 mortgage payments $2,078.80
Payment of court costs 1,092.00[1]
Payment of certain community debts 4,406.57[2]
$7,577.37
Plaintiff received some community funds after the suit was filed, one-half of which ($662.71) was ordered paid to defendant.
Defendant likewise received some community funds after the suit was filed and one-half of these funds ($346.34) was ordered paid to plaintiff. Defendant was ordered to pay plaintiff from her separate funds, $500 which she charged to him on his credit card after suit was filed. She was also required to pay the plaintiff from her separate funds, the 1978 mortgage payments totaling $1,369.89 which she should have paid as the judgment directed. Defendant took her inheritance of almost $10,-000 and divided it, depositing in a Dallas bank an almost equal amount in a checking account in her name and in a savings account in the name of “Mrs. . . or Mr. . ” Shortly afterward she wrote a $2,000 check to the builder or seller for a down payment on a home the parties purchased in Dallas. Two months later she wrote a $3,000 check to cash and wrote on the check “Saving for House.” Defendant placed the $3,000 into a savings account to satisfy a requirement of the lending institution that financed the purchase of the Texas home in 1967. It was not shown that plaintiff expended any of defendant's inherited funds or that defendant expended *183 any sum other than the $2,000 for or on behalf of the community. The Texas home was sold and the proceeds from its sale were applied to satisfy debts incurred in the purchase of the family home of the parties in Monroe. The record supports the lower court’s judgment in this respect. CC Arts. 2390, 2391. Emerson v. Emerson, 322 So.2d 347 (La.App. 2d Cir. 1975).
The husband contends that the lower court erred in not allowing him credit against the community for the mortgage payments which he contends were made through the alimony payments to his wife (12 mortgage payments of $415.76 she made in 1977). He makes no claim that the alimony should be charged to the community.
In Gondrella v. Gondrella, 347 So.2d 938 (La.App. 4th Cir. 1977) the ex-husband claimed a credit against the community proceeds in a partition suit for the alimony pendente lite he had paid his ex-wife before divorce and for the payments he had paid to satisfy the mortgage debt secured by the family home. The court said that the ex-husband should receive no credit against the community for the amounts paid as alimony, but allowed him a credit for the amounts he paid on the mortgage.
In McElwee v. McElwee, 255 So.2d 883 (La.App. 2d Cir. 1971), writs denied, we held that where the wife has possession of community funds in excess of the accrued alimony pendente lite, the alimony owed the wife at the time of partition of the community property is chargeable to the community property and not to the separate estate of the husband.
It should be observed here that there were no substantial revenues such as rents, accruing to the fictitious community after the effective date of dissolution and that the community funds at the disposition of each party at and after this time were relatively of insignificant or inconsequential amount.
We find no error with respect to the lower court’s charging the community with the mortgage payments made by the plaintiff ex-husband in 1976 ($2,078.80).
The judgment of separation signed in January 1977 directed the defendant to make the mortgage payments on the family home. She did this during that year. When the partition sale occurred the mortgage payments she did not make in 1978 ($1,369.89) were paid the mortgagee as a part of the balance due on the mortgage. If she had paid the mortgage payments as directed by the judgment, they would have not been chargeable to the community under the lower court’s rationale in not allowing the community to be charged with the 1977 mortgage payments she made as directed. The trial court ordered that the defendant should pay plaintiff the full amount of the mortgage payments she did not pay in 1978 ($1,369.89). The trial court, however, did not allow plaintiff a charge against the community or a charge against the defendant for the mortgage payments which were made as directed in 1977.
Our interpretation of the judgment of January 1977, produces a different, and we believe a much fairer result. The judgment expressly requires the husband to pay the wife in addition to the alimony, $100 per month until the family home is sold. It also requires the wife to pay the monthly mortgage payments. She, of course, was residing in the former family home. Therefore, he was contributing $100 per month to the mortgage payment. The wife is paying the remainder as a part of her living expenses. He should not be entitled to charge her, upon dissolution of the community, more than he was contributing to the mortgage payment which she did not pay. His credit for the contribution, $100 per month made from his earnings after the judgment of separation, should be charged to the community upon partition.
Thus in these respects we amend the judgment below to allow the plaintiff ex-husband these charges against the community fund:
*184 1976 mortgage payments $2,078.80
1977 contribution to mortgage payments 1,200.00
Listed community debts paid by husband after effective date of dissolution of community 4,406.57
Court costs paid 1,092.00
TOTAL $8,777.37
We affirm the $2,000 charge against the community arising from the wife’s expenditure of her separate funds towards the purchase of the Monroe residence. We amend to delete the award of the husband against the wife for the total of the three 1978 mortgage payments she failed to make as directed. It is impossible for us to determine from this record what credit the plaintiff ex-husband should receive because of the ex-wife’s failure to make the three 1978 mortgage payments. We have allowed him to charge against the community $100 per month for the contribution he made to the 1977 mortgage payments. He should be allowed at least that much against the ex-wife for her failure to make the three 1978 mortgage payments. Rather than remand and further protract this litigation, we believe justice will be served by simply allowing him that amount as a charge against her.
RECAPITULATION:
Community fund $28,196.08
Amount owed Mr. Morris from community $8,777.37
Amount owed Mrs. Morris from community 2.000.00 (10.777.371
Net community fund $17,418.71
One-half (14) community fund $ 8,709.35
Credit adjustment:
Amounts owed Mr. Morris by Mrs. Morris
Credit card transaction $500.00
1978 mortgage payment 300.00
% community funds received by her since effective date of dissolution of community 364.34 1,164.34
Amounts owed Mrs. Morris by Mr. Morris
!4 community funds received by him since effective date of dissolution of community 662.71
Resulting credit to Mr. Morris 501.63
Leaving adjusted share to Mrs. Morris ($8,709.35 less $501.63) or 8,207.73
Plus amount payable from community 2,000.00
Amount to be paid to Mrs. Morris: $10.207.73
Amounts to be paid to Mr. Morris: % net community Amount owed by community Credit adjustment 8,709.35 8,777.37 501,63
Total amount to be paid to Mr. Morris: $17,988.35
Proof equals net community $28,196.08
For reasons assigned in the court below and summarized here, except as herein amended, the judgment below as amended is affirmed at the cost of appellant.

. In Morris v. Morris, supra, we reviewed the separation judgment, including alimony pen-dente lite and custody decrees, rendered by the trial court in this litigation. There we assessed court costs, constituting a community debt, to plaintiff as head and master of the community. Plaintiff thereafter paid the costs with his separate funds, thereby entitling him to reimbursement from the community. See Gouaux v. Gouaux, 211 So.2d 97 (La.App. 1st Cir. 1968); Succession of Hyde, 281 So.2d 136 (La.App. 3d Cir. 1973).

. This figure represents various undisputed community debts paid by plaintiff with his separate funds thus entitling him to reimbursement from the community. See Gouaux, supra; Hyde, supra. These expenses are itemized as follows:
Auto insurance $ 760.00
Payments on 1975 Buick 1,474.20
J. C. Penney 123.63
Mary’s Flower Shop 7.88
Holly Lake Ranch:
payments 987.36
1976 taxes 54.32
Sears — tires 90.32
Titch Dept. Store 56.10
Bankamericard 646.84
Mastercharge 17.33
J. C. Penney 152.40
Selber Bros. 36.19
TOTAL $4,406.57